

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| FIRE 'EM UP, INC., ) | |
| ) | |
| Plaintiff, ) | 10 C 8050 |
| ) | |
| v. ) | |
| ) | |
| TECHNOCARB EQUIPMENT (2004) ) | Hon. Charles R. Norgle |
| LTD, et al., ) | |
| ) | |
| Defendants. ) | |

### OPINION AND ORDER

CHARLES R. NORGLE, District Judge

Before the Court is Defendants Technocarb Equipment (2004) Ltd. ("Technocarb") and Aurora Electronics, Ltd.'s ("Aurora") Motion to Dismiss Counts V-VIII of Plaintiff Fire 'Em Up, Inc.'s ("FEU") Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons the Motion is granted in part and denied in part. Counts V and VII are dismissed without prejudice. Counts VI and VIII are dismissed with prejudice.

### I. BACKGROUND

#### A. Facts

This is a civil action for patent infringement arising under the patent laws of Title 35 of the United States Code. The Court therefore has supplemental jurisdiction over the Illinois state law claims. FEU alleges the following facts. Jeffrey Bach ("Bach") invented the Diesel Magnum TM Propane Injection System for Diesel Engines ("Diesel Magnum") and obtained a patent for "Propane Injection Control System and Apparatus for Vehicles," U.S. Patent Number 7,100,582 B1. Bach assigned his rights in the patent to Dynamic Fuel Systems, Inc., which

licensed FEU to manufacture, test, sell, distribute, promote, and protect the patented product. On February 7, 2008, FEU and Technocarb entered into a Master Distributorship Agreement. Pursuant to this agreement Technocarb would be the Master Distributor of the Diesel Mangum for FEU for five years commencing on February 11, 2008. The agreement contains non-disclosure[1] and non-competition[2] restrictive covenants. Under the agreement, FEU released to Technocarb trade secret, confidential, and proprietary information that is invaluable in manufacturing, promoting, and selling the product.

According to FEU, Technocarb used the training and materials provided by FEU to develop, promote, and sell its own fuel device, EcoDiesel System, instead of using reasonable efforts to sell its Diesel Magnum. FEU claims that Technocarb and Aurora participated in a scheme to defraud FEU. Specifically, FEU alleges that Techocarb provided Aurora with its proprietary information to manufacture the competitive product, EcoDiesel.

---

[1] The non-disclosure covenant states,
  Master Distributor agrees that it will not disclose to others any of the trade secrets or other secret information revealed during this agreement or any time thereafter. Master Distributor further agrees not to attempt at any time to access the source code of any software used in connection with the product whether in direct use of the product or in testing, calibrating, or otherwise related to the product or its sales and promotions. . . . Master Distributor agrees not to use at any time or disclose to others any [proprietary] information.
Am. Compl. Ex. 1, ¶ 2.

[2] The non-competition covenant states,
  Master Distributor shall not as principal, agent, employee, or otherwise, engage in or be concerned with any business activities directly or indirectly involving the use of goods in competition with those of Manufacturer . . . . Further, Master Distributor shall not at any time, except in performing the responsibilities of this agreement, divulge or use any confidential or business information relating to the business affairs of the Manufacturer.
Am. Compl. Ex. 1, ¶ 11.

## B. Procedural History

FEU initiated this case on December 20, 2010, alleging breach of contract (Count I), patent infringement (Counts II, III, and IV), trade secret misappropriation (Count V), conversion (Count VI), fraud (Count VII), and an accounting (Count VIII). On December 28, 2010, FEU filed an amended complaint in order to correct an attached exhibit. Initially there were six defendants in this case. Defendant Intigreen Technologies, Inc. ("Intigreen") was voluntarily dismissed on February 24, 2011; therefore, Count III, which alleges patent infringement against Intigreen, was dismissed. Defendants David Shea, Peter Gordon, and Jeffrey Buechler were voluntarily dismissed on March 16, 2011. On April 11, 2011, the remaining defendants, Technocarb and Aurora (collectively, "Defendants") answered Counts I, II, and IV of the amended complaint, filed a counterclaim, and moved to dismiss Counts V, VI, VII, and VIII. The Motion is fully briefed and before the Court.

## II. DISCUSSION

## A. Standard of Decision

In deciding a Rule 12(b)(6) motion, the court accepts all well-pleaded facts as true, and draws all reasonable inferences in favor of the plaintiff. Andonissamy v. Hewlett-Packard Co., 547 F.3d 841, 847 (7th Cir. 2008) (citing Porter v. DiBlasio, 93 F.3d 301, 305 (7th Cir. 1996)). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). "Dismissal is proper if 'it appears beyond doubt that the plaintiff cannot prove any facts that

would support [its] claim for relief.'" Wilson v. Price, 624 F.3d 389, 392 (7th Cir. 2010) (quoting Kennedy v. Nat'l Juvenile Det. Ass'n, 187 F.3d 690, 694 (7th Cir. 1999)). "Finally, a complaint must allege facts bearing on all material elements 'necessary to sustain a recovery under some viable legal theory.'" Looper Maint. Serv. Inc. v. City of Indianapolis, 197 F.3d 908, 911 (7th Cir. 1999) (quoting Herdrich v. Pegram, 154 F.3d 362, 369 (7th Cir. 1998)).

## B. Motion to Dismiss

### *1. Count V–Trade Secret Misappropriation*

Count V alleges trade secret misappropriation against Technocarb in violation of the Illinois Trade Secrets Act ("ITSA"). Defendants argue that FEU has failed to adequately allege trade secret misappropriation because the claim recites bare legal conclusions that fail to plead the required elements. To state a claim for trade secret misappropriation, a plaintiff must allege: (1) that the information at issue was a trade secret; (2) that it was misappropriated; and (3) that it was used in the defendants' business. Learning Curve Toys, Inc. v. PlayWood Toys, Inc., 342 F.3d 714, 721 (7th Cir. 2003) (citations omitted). But see Parus Holdings, Inc. v. Banner & Witcoff, Ltd., 585 F. Supp. 2d 995, 1005 (N.D. Ill. 2008) (determining that Liebert Corp. v. Mazur, 827 N.E. 2d 909, 925 (Ill. App. Ct. 2005), more accurately states the elements of trade secret misappropriation, which include: "(1) a trade secret existed; (2) the secret was misappropriated through improper acquisition, disclosure, or use; and (3) the owner of the trade secret was damaged by the misappropriation" (internal quotation marks and citations omitted)). A trade secret is information that "(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances

4

to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d).

Defendants contend that FEU failed to specify what information constitutes its alleged trade secrets. While it is true that specificity of concrete trade secrets is required to support a finding of misappropriation, Composite Marine Propellers, Inc. v. Van Der Woude, 962 F.2d 1263, 1265-66 (7th Cir. 1992), the alleged trade secrets need not be disclosed in detail in a complaint to survive a motion to dismiss. AutoMed Techs., Inc. v. Eller, 160 F. Supp. 2d 915, 920-21 (N.D. Ill. 2001). "Courts only dismiss a claim for lack of specificity on the pleadings in the most extreme cases." Id. n.3 (citing Thermal Zone Prods. Corp. v. Echo Eng'g, Ltd., No. 93 C 0556, 1993 WL 358148, at *5-6 (N.D. Ill. Sept.14, 1993)). Nothing about this case, however, appears extreme. FEU alleges that its trade secrets include:

> their list of current and prospective customers, lists of current or prospective suppliers, lists of their current and prospective business partners, combinations or compilations of materials necessary to create the Diesel Magnum or perform certain services, programs, methods, techniques and devices used by Fire Em Up in creating the Diesel Magnum and rendering its services, financial data, marketing plans and advertising strategies, and various other proprietary, confidential, and non-public information from which Fire Em Up obtains revenue and competitive advantage.

Am. Compl. ¶ 66.

Similar allegations have been found sufficient to withstand motions to dismiss in this District. See, e.g., Labor Ready, Inc. v. Williams Staffing, LLC, 149 F. Supp. 2d 398, 412 (N.D. Ill. 2001) (finding allegations of trade secret information including business practices, models, and data; customer lists; customers' information; recruiting and training methods; site selection and compensation models; dispatch office layouts; pricing data; computer software and hardware; formats; manuals; methods and techniques of operation and training; personnel files; and marketing strategies sufficient to state a claim); Lincoln Park Sav. Bank v. Binetti, No. 10

CV 5083, 2011 WL 249461, at *2 (N.D. Ill. Jan. 26, 2011) (denying a motion to dismiss where the complaint contained enough factual detail to put the defendants on notice of misappropriation of "confidential customer and other information" contained in a loan origination system). The Court also notes that under Illinois law, customer lists can constitute trade secrets depending on the facts of each case. See, e.g., Liebert Corp., 827 N.E. 2d at 922. FEU's allegations regarding its trade secrets are therefore sufficient to withstand dismissal.

Next, Defendants argue that FEU failed to allege facts bearing on an essential element of the statutory definition of a trade secret, *i.e.*, that the alleged trade secret information "is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality." 765 ILCS 1065/2(d)(2). FEU points to its Master Distributorship Agreement with Technocarb as factual support for its efforts to protect the alleged trade secret information. While "an agreement restricting the use of information may be considered a reasonable step to maintain secrecy of a trade secret," Dick Corp. v. SNC-Lavalin Constructors, Inc., No. 04 C 1043, 2004 WL 2967556, at *10 (N.D. Ill. Nov. 24, 2004) (citation omitted), such an agreement, without more, is not enough. Although there are references to the Master Distributorship Agreement in the amended complaint from which inferences of confidentiality may be drawn, FEU has failed to plead that the secrecy of its information was adequately maintained.

Even when viewed in the light most favorable to FEU, the amended complaint does not allege facts that raise FEU's right to relief above a speculative level. Without allegations bearing on FEU's efforts to maintaining the confidentiality of the alleged trade secrets, FEU's claim for trade secret misappropriation must be dismissed. See Alpha Sch. Bus Co., Inc. v. Wagner, 910 N.E. 2d 1134, 1153-55 (Ill. App. Ct. 2009) ("[T]he pleadings, even when viewed in the light

most favorable to plaintiffs, do not meet the statutory definition of a trade secret, which is a required element in a misappropriation of trade secrets claim."). Because this deficiency may be cured, Count V is dismissed without prejudice.

### 2. *Count VI–Conversion*

Count VI alleges that Technocarb has converted FEU's technology. To state a claim for conversion in Illinois, a plaintiff must allege: (1) the defendants' unauthorized and wrongful assumption of control, dominion or ownership over the plaintiff's personal property; (2) the plaintiff's right to the property; (3) the plaintiff's absolute and unconditional right to immediate possession of the property; and (4) the plaintiff's demand for possession of the property. Roderick Dev. Inv. Co., Inc. v. Cmty. Bank of Edgewater, 668 N.E. 2d 1129, 1133 (Ill. App. Ct. 1996) (citing Gen. Motors Corp. v. Douglass, 565 N.E.2d 93 (Ill. App. Ct. 1990)). Further, "an action for conversion lies only for personal property which is tangible, or at least represented by or connected with something tangible." In re Thebus, 483 N.E.2d 1258, 1260 (Ill. 1998) (citation omitted). This is consistent with the idea that the subject of conversion must be an identifiable object of property. Id.

Defendants argue that this claim fails as a matter of law because no tangible property was allegedly taken. FEU responds that Technocarb converted not only its patent, but its patented product, the Diesel Magnum. According to FEU, the technology of the Diesel Magnum is in the components and the way it is constructed. The very same technology is the subject matter of FEU's patent. To the extent that FEU argues that the Diesel Magnum product was converted, its claim fails because there are no corresponding allegations in the amended complaint. FEU's arguments supercede the amended complaint; there are no allegations that could plausibly state a

claim to relief on this basis.

With respect to the contention that FEU's patent itself was converted, Defendants argue that intellectual property, such as a patent, is not the type of tangible representation of property that supports a common law claim of conversion. In support of this argument, Defendants rely on <u>Richmond ex rel. v. National Institute of Certified Estate Planners</u> as persuasive authority. No. 06 C 1032, 2006 WL 2375454, at *7 (N.D. Ill. 2006). In <u>Richmond</u>, the plaintiff alleged that a federal trademark was converted. <u>Id.</u> The court determined that the plaintiff failed to state a claim for conversion under Illinois law because it was a "different and unnecessary restatement of his federal trademark infringement claims." <u>Id.</u> The court reasoned, "A trademark exists solely because a federal statute memorialized an idea and thereby transformed it into intellectual property protected by federal law. In contrast, property that is typically the subject of conversion . . . whether tangible or intangible, exists independently (*e.g.*, a house, a satellite signal, a customer list, etc.)." <u>Id.</u> (citation omitted).

The Court agrees with the reasoning set forth in <u>Richmond</u> and determines that FEU's conversion claim fails outright. A patent, like a trademark, "exists solely because a federal statute memorialized an idea and thereby transformed it into intellectual property protected by federal law." <u>Richmond</u>, 2006 WL 2375454, at *7. Here, the patent itself cannot be the subject of conversion. It is the federally derived rights from the issued patent, *i.e.*, the authority to make, use, offer to sell, or sell the patented technology, see 35 U.S.C. § 262, which FEU ultimately argues were converted. These rights, however, are the subject of FEU's patent infringement claims pursuant 35 U.S.C. § 271. Count VI is FEU's patent infringement claims improperly and redundantly cloaked as a conversion claim. Accordingly, Count VI is dismissed with prejudice.

The Court therefore need not consider whether this claim is preempted by the ITSA.

### 3. *Count VII–Fraud*

Count VII alleges that Defendants carried out a scheme to defraud FEU when they used its trade secret, proprietary, and confidential information to develop, manufacture, and sell a competitive product, EcoDiesel. Defendants argue that this count should be dismissed because it is both deficient and therefore fails to state a claim and preempted by the ITSA.

#### *a. Defendants' Contention That FEU's Fraud Claim Is Preempted by the ITSA*

Defendants argue that the ITSA preempts Count VII. Section 8(a) of the ITSA states that: "this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 ILCS 1065/8. "This statute abolishes claims other than those based on contract arising from misappropriated trade secrets, replacing them with claims under the Act itself." Hecny Transp., Inc. v. Chu, 430 F.3d 402, 404 (7th Cir. 2005). In Hecny, the Seventh Circuit held that claims are preempted by the ITSA "only when they rest on the conduct that is said to misappropriate trade secrets." Id. at 404-05 (citations omitted). In other words, the ITSA preemption provision "does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information." Id. at 405 (citation omitted).

As an initial matter, the Court notes that FEU's fraud claim is based upon contractual obligations under the Master Distributor Agreement. Moreover, the fraud claim is not dependent upon the existence of the alleged trade secret information that gives rise to the ITSA claim. The Court acknowledges that "[w]hile there may be substantial overlap between confidential information and trade secrets, 'an enforceable restrictive covenant may protect material not

9

properly characterized as a trade secret' and thus affords broader protection than trade secret law does." SKF USA, Inc. v. Bjerkness, 636 F. Supp. 2d 696, 711 (N.D. Ill. 2009) (quoting Smith Oil Corp. v. Viking Chem. Co., 468 N.E.2d 797, 800 (Ill. App. Ct. 1984)). Thus, even if the alleged proprietary and confidential information do not constitute trade secrets, an action for fraud is still sound. Accordingly, Count VII is not preempted by the ITSA.

### b. Defendants' Contention That FEU's Fraud Claim Is Deficient

Defendants argue that FEU's fraud claim fails to comply with the heightened pleading standard of Rule 9(b). Under Rule 9(b), a plaintiff must state with particularity the circumstances constituting fraud. "In adding flesh to the bones of the word particularity, we have often incanted that a plaintiff ordinarily must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co., 631 F.3d 436, 441-42 (7th Cir. 2011) (quoting United States ex rel. Lusby v. Rolls–Royce Corp., 570 F.3d 849, 854 (7th Cir. 2009)). "Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth." McClellan v. Cantrell, 217 F.3d 890, 893 (7th Cir. 2000) (internal quotation marks and citation omitted). To state a claim for common law fraud in Illinois, a plaintiff must allege: (1) a false statement of material fact; (2) defendants' knowledge that the statement was false; (3) defendants' intent that the statement induce the plaintiff to act; (4) plaintiff's reliance on the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. Connick v. Suzuki Moto Co., 675 N.E.2d 584, 591 (Ill. 1996); see also Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc., 250 F.3d 570, 574 (7th Cir. 2001).

Defendants allege numerous deficiencies in FEU's fraud claim, including the failure to sufficiently allege: (1) that the statements allegedly made by Defendants were false; (2) that Defendants intended their statements to induce FEU to take some action; and (3) that FEU relied upon the truth of the statements which lead to its injury. The Court agrees. The amended complaint fails to allege material elements, which are necessary to state a cause of action sounding in fraud. See Cwikla v. Sheir, 801 N.E. 2d 1103, 1110 (Ill. App. Ct. 2003) ("In order to establish fraud, it must be alleged . . . that the statement must have been made for the purpose of inducing the other party to act, and the reliance by the person to whom the statement is made must lead to his injury.").

These deficiencies are underscored by FEU's reliance upon allegations outside of the amended complaint in its Response to Defendants' Motion. For example, FEU responds that the false statement consists of the non-compete agreement found within the Master Distributor Agreement. Further, it asserts that Technocarb knew that, by entering into the Master Distributor Agreement, FEU would trust the agreement and, in turn, would give Technocarb all of its proprietary information. FEU also argues that Technocarb knew that once it had this information, it would enter into an agreement with Aurora to manufacture its own competing product. "But those are not the allegations here—and flexibility in the face of information asymmetries should not be conflated with whistling past the rules of civil procedure." Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust, 631 F.3d at 446. FEU must plead plausible grounds in alleging that Defendants were engaged in a fraudulent scheme. FEU has failed to do this. These deficiencies, however, may be cured. Count VII is therefore dismissed without prejudice.

11

### 4. *Count VIII–Accounting*

Count VIII alleges that FEU is entitled to an accounting of all costs, expenditures, assets, liabilities, contracts, future income, and any other financial information in Defendants' possession or control arising out of its marketing or use of its technology or patent. Defendants argue that the amended complaint fails to allege the necessary elements for an accounting claim and therefore must be dismissed. To state a claim for the equitable relief of an accounting under Illinois law, a plaintiff must allege the absence of an adequate remedy at law and at least one of the following: (1) a breach of a fiduciary relationship; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature. Mann v. Kemper Fin. Cos., 618 N.E.2d 317, 327 (Ill. App. Ct. 1992); see also Kempner Mobile Elecs., Inc. v. Sw. Bell Mobile Sys., 428 F.3d 706, 715 (7th Cir. 2005). Only if the accounting claim is based upon a breach of fiduciary duty, however, may a plaintiff proceed without alleging the absence of an adequate remedy at law. Mann, 618 N.E.2d at 327.

Here, FEU's amended complaint alleges neither the absence of an adequate remedy at law, nor a breach of fiduciary duty. Instead, FEU has alleged breach of contract in Count I. Nonetheless, FEU argues that its breach of contract claim does not provide a complete remedy at law because damages under its breach of contract claim may be insufficient based on the "special nature" of the contract's subject matter. FEU provides no case law in support of this argument. Contrary to FEU's assertions, the Court finds that Count I of the amended complaint is "nothing more than a garden-variety contract dispute." Kempner Mobile Elecs., Inc., 428 F.3d at 715. Indeed, the information that FEU seeks in its accounting claim should be revealed through discovery. See First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007,

12

1011 (7th Cir. 1985). Thus, Count VIII is dismissed with prejudice.

### III. CONCLUSION

For the foregoing reasons, the Motion is granted in part and denied in part. If FEU can cure the deficiencies in its amended complaint with sufficient detail to withstand a subsequent motion to dismiss, it may file a second amended complaint with respect only to its fraud and trade secret misappropriation claims by July 15, 2011.

IT IS SO ORDERED.

ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATED: June 27, 2011